## *In re* BASSETT and another.

### (*District Court, D. Maine.*   May, 1881.)

1. BANKRUPTCY—BUTCHER.

The bankrupts, on their examination, testified that they had been engaged in buying and selling cattle, butchering, and farming some, and that the firm business amounted to from $2,000 to $3,000, or thereabouts, per year. *Held*, that their business was that of butchers.

2. SAME—TRADESMAN.

Within the bankrupt act a butcher is a tradesman.

3. SAME—BOOKS OF ACCOUNT—DISCHARGE OF THE BANKRUPT.

Where the bankrupts are tradesmen and keep no books of accounts, they are not entitled to a discharge under the bankrupt law.

4. SAME—EVIDENCE.

Where the statements made by such bankrupts, at a hearing before the court, vary greatly from their former ones, made before the register, in that they are much more favorable to themselves, *held*, in view of a change the course of their case was taking meanwhile, their original statements must be taken to be the more trustworthy

In Bankruptcy.

*Henry L. Mitchell,* for bankrupt.

*Harvey D. Hadlock,* for creditors.

Fox, D. J. The discharge of these bankrupts is opposed on the ground that they, being tradesmen, did not keep proper books of account. These bankrupts are brothers, who, for nearly 20 years prior to their petition in bankruptcy, resided on a farm in Verona, in this district. They had separate families, but carried on the farm together, and were also engaged in the business of buying, selling, and slaughtering cattle and other stock. No accounts were kept of their receipts or expenditures. Each used from the farm produce and from

sales of stock, as needed, but no account was kept by either party of the sums thus appropriated, or of their purchases and sales. Most of their purchases were paid for at the time, either in cash or by their joint notes, not using any firm names; and at the time of filing their petition to be declared bankrupts they were thus jointly indebted for over $3,700, nearly the whole of which was for cattle, sheep, and other stock, and they were entirely without assets. It is claimed that, by reason of their business as butchers, they were tradesmen within the bankrupt act.

The bankrupts were examined before the register. These examinations are the only evidence produced against them. Nehemiah, in answer to interrogatory 1, which was, "What business transactions were you engaged in during the years 1876 and 1877?" says: "Buying and selling cattle, butchering, and farming, some." In reply to second interrogatory, he gives the names of various parties from whom they purchased stock in 1877, with the amounts paid them, aggregating $1,257, and admits that they also purchased other stock that year from the same, as well as from other, parties, but is unable to give the amount of such purchases. J. R. Bassett, in answer to interrogatory 85, says "the amount of their firm business was $2,000 to $3,000 per year, or thereabouts, for the last two or three years they were together." The firm also bought and sold cattle on the foot, and were engaged in shipping eggs to Boston, and for one or two seasons in catching fish in the Penobscot river, near their farm. The meat from the animals slaughtered by them was usually sold to the storekeepers in Bucksport, and other places in that vicinity. At times considerable quantities were sent to Boston for sale, frequently resulting in a loss.

At the hearing before me the bankrupts were again examined, and they then insisted they were farmers; that the trading in stock by them, and their business as butchers, were merely casual and occasional transactions, the purchases being made for the purpose of having the stock consume the hay product on the farm, and, after fattening them, convert them into money by slaughtering and disposing of the product; and that their purchases thus made were only from $500 to $1,000 per year, or, to use J. R. Bassett's language, "We were farmers, and once in a while would buy stock and fatten them to kill." The explanation thus given by them, after the emergency had arisen as to the nature and extent of their business, is inconsistent with these examinations, and the court must, therefore, rely on their original statement, as being in all probability the most trustworthy;

especially, confirmed as it is by the amount of their joint liabilities as set forth in their schedules.

The case of *Cote*, 2 Low. 372, is relied upon as requiring the court to hold that these bankrupts are not to be deemed tradesmen within the meaning of the bankrupt act. Coté was a farmer, and—

"Several times in each year visited Canada, purchasing horses, cattle, and sometimes hay for use on his farm, and partly for sale. His dealings were for cash. There was no evidence that his failure was connected with his buying and selling. There was some conflict as to the amount of his dealings."

The present case is by no means a parallel one. Here, the whole amount of the joint indebtment of the bankrupts is on account of their purchases of stock, and it is a large sum for this class of debtors to be owing in this district. The business thus transacted by them must have been at least $2,500 per year, which was without doubt six or eight times more than the value of their farm products. Considering, therefore, that by reason of their thus carrying on the butchery and stock business they have thus become so deeply involved, and that if they had not followed this business so extensively they would not have contracted these debts, and that their business was so conducted for the profits which were expected by the bankrupts to be realized therefrom it must be manifest that this had but little connection with their farming operations. The farming was secondary and merely incidental. Their stock trading and butchering occupied the most of their time, involved much larger receipts and disbursements, and was in fact the principal occupation of the bankrupts and the cause of their insolvency.

In *Boston Daily Advertiser*, of May 26, 1881, is found a report of the case of *In re Kimball*, decided by *Lowell*, J., Mass. Cir. Court, May 25th. This was a petition for a reversal of a decree of *Nelson*, J., granting a discharge to the bankrupt.

"The bankrupt was a teamster, owning many horses and carts, and engaged for years extensively in this business. When it became slack, he took to supplying certain friends and neighbors with hay and straw. He did this to keep his horses and carts employed, and when he sold at wholesale, he charged only enough above the cost to pay his usual charges for teaming. He also sold sometimes at retail.

It was ruled, in the district court, that he was not a trader under the bankrupt act, and this decision was affirmed by the circuit judge, upon the ground that the business of the bankrupt was that of a teamster, and his dealing in hay and straw, although to a large amount in some years, was, in fact, prosecuted by him in connection with and as a portion of his business as a teamster, in furnishing

employment for his teams when not otherwise at work. The present case is, therefore, quite different from Kimball's, as the chief occupation of these bankrupts was in stock trading and slaughtering the cattle, and their farming was, in comparison, of but little moment.

In *Cote's Case*, it is conceded by the court that a butcher ordinarily would be deemed a tradesman within the bankrupt act; and as it is not claimed that these bankrupts kept any books of account other than small pocket diaries, which afforded no information as to their affairs, the court is, for this cause, compelled to deny them their discharge, without passing upon other objections which are made by the opposing creditor.